REQUESTED BY: Harold Clarke, Director, Nebraska Department of Correctional Services
You have requested an Attorney General's Opinion regarding inmate Jeremy Sheets (Sheets), and whether he could receive compensation from Benetton for the use of his photograph in an advertising campaign. Specifically, you wanted to know (1) whether the payment of money to Sheets in exchange for the use of his photograph runs afoul of Neb. Rev. Stat. § 81-1836; and (2) if the statute covers payments of this type, what action should the Department of Correctional Services (DCS) take to collect from Sheets.
It is our belief that Benetton's use of Sheets' photograph is covered by Neb. Rev. Stat. § 81-1836, and, further, that the statute encompasses Sheets' interview which was used in conjunction with the photograph for the advertisement campaign. Accordingly, it is our opinion that the compensation received by Sheets should be forwarded to the Crime Victim's Reparations Committee pursuant to Neb. Rev. Stat. § 81-1836.
This issue arose when Sheets received a check from Benetton for $1,000.00 in exchange for the use of his photograph in an advertising campaign. The photograph apparently is to be used for billboards, advertisements and is posted on Benetton's web site located at www.Benetton.com. Additionally, Benetton interviewed each inmate whose pictures were utilized and those interviews are to be distributed in an advertisement brochure, the catalogue and are located on the web site as well.
Neb. Rev. Stat. § 81-1836 states, in pertinent part, that a company contracting with any person accused of a crime in this state with respect to the reenactment of such crime, by way of a book, movie, magazine article, radio, or television presentation, live entertainment of any kind, or from the expression of suchperson's thoughts, feelings, opinions or emotions regarding suchcrime, shall pay over to the committee any money which would otherwise, by terms of such contract, be owing to the person so convicted.
A review of the relevant statutes indicate that the use of Sheets' photograph falls within the meaning of Neb. Rev. Stat. §81-1836. The advertisements by Benetton were designed to campaign against the death penalty and to crusade for those whose crimes resulted in the imposition of the death penalty. But for his crime, Sheets would not have received the death penalty and would not have been a candidate for Benetton's promotion. Through his participation in the advertisement, Sheets is expressing his thoughts, feelings, opinions or emotions regarding his murder of Kenyatta Bush. Therefore, the compensation paid to Sheets should be deposited into the Victim's Compensation Fund.
An argument could be made that Sheets' photograph alone does not entail a reenactment of his crime, or express his thoughts, feelings, opinions or emotions regarding the crime. However, Benetton's advertising campaign includes more than photographs. The death row inmates were interviewed on a variety of subjects, most of which did not pertain to the inmates' crimes or their victims. The following are Sheets' responses to two questions asked in the interview:
 Q: Am I correct in understanding that you believe yourself to be innocent?
A: Yes
 Q: What's it like to believe yourself innocent and hear a guilty verdict read?
 A: Honestly I wasn't really shocked because of the way that things were going in the courtroom. No matter what they were going to find me guilty. I was kind of prepared for it. There was so much publicity, and so much pressure from the media and certain groups in the community to convict me.
The interview in its entirety is attached to this letter and incorporated herein by this reference. In our opinion, the above cited questions and answers clearly express Sheets' thoughts, feelings, opinions or emotions regarding his crime, i.e., he believes himself to be innocent. Therefore, Sheets' participation in the Benetton advertising campaign falls within the meaning of Neb. Rev. Stat. § 81-1836, and the compensation received by Sheets should be deposited into the Victim's Compensation Fund.
Pursuant to Neb. Rev. Stat. § 81-1836, Benetton, the company, should have paid the money owed to Sheets directly to the Crime Victim's Reparations Committee. However, that did not occur in this case. The statute is clear that the compensation shall bepaid to the committee which then shall deposit the money in the Victim's Compensation Fund. Therefore, the Department of Correctional Services should transfer the money from Sheets' inmate account to the Crime Victim's Reparations Committee forthwith in the same manner as it would transfer an inmate's wages to the committee.
In conclusion, it is the Attorney General's opinion that the compensation received by Sheets should be transferred to the Crime Victim's Reparations Committee to be deposited into the Victim's Compensation Fund.
Attorney General
 Jennifer M. Amen Assistant Attorney General
Approved By:
DON STENBERG
Attorney General